# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 13mj7112 JCB
SPRINT CELLULAR TELEPHONE ASSIGNED CALL )
NUMBER 617-501-4417 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Sprint cellular telephone assigned call number 617-501-4417

located in the _____ District of ___Massachusetts___, there is now concealed *(identify the person or describe the property to be seized)*:
Location of Steven Nolte, a/k/a George France, a person to be arrested

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☐ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1542 | False statements in a passport application |
| 18 U.S.C. 1028A | Aggravated identity theft |
| 42 U.S.C. 408(a)(7)(A) | Use of falsely-obtained social security number |

The application is based on these facts:
See attached Affidavit of DEA Special Agent Garth Hamelin.

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

James J. Jenkins, Special Agent, DSS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __08/22/2013__

*Judge's signature*

City and state: Boston, Massachusetts    Hon. Jennifer C. Boal, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE USE OF A PEN REGISTER AND TRAP AND TRACE WITH CALLER IDENTIFICATION DEVICE AND CELL SITE LOCATION AUTHORITY ON TELEPHONE NUMBER 617-501-4417 | NO. 13 mj 7112 JCB<br><br>**FILED UNDER SEAL** |

**AFFIDAVIT OF SPECIAL AGENT JAMES J. JENKINS**

I, James J. Jenkins, being duly sworn, hereby depose and state as follows:

*INTRODUCTION*

1. I am a Special Agent with the United States Department of State Diplomatic Security Service ("DSS"). I have been a Special Agent with DSS for approximately 1.5 years. Among other duties I conduct investigations regarding violations of 18 U.S.C. § 1542, making false statements in a passport application, and related offenses.

2. I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 2703 (c)(1)(A), authorizing DSS agents to ascertain the physical location, including but not limited to E-911 Phase II data (or other precise location information) (hereinafter the "Requested Information") for a period of thirty (30) days for cellular/wireless number 617-501-4417, which is a Sprint cellular telephone number (hereinafter, the "Target Telephone"). Such information shall, where other information is

1

unavailable, include records reflecting the tower and antenna face ("cell site") used by the Target Telephone at the start and end of any call.

### *PROBABLE CAUSE*

3. On August 20, 2013, a grand jury returned a sealed indictment charging Steven Nolte, a/k/a George France ("Nolte"), with making false statements in a passport application, in violation of 18 U.S.C. § 1542; aggravated identity theft, in violation of 18 U.S.C. § 1028A; and use of a falsely-obtained social security number, in violation of 42 U.S.C. § 408(a)(7)(A). I do not attempt herein to provide all information known to me regarding this matter. Rather, I provide only information sufficient to establish the requisite probable cause to show that the Requested Information will assist DSS in locating Nolte, a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

4. On May 11, 2012, an individual executed a passport application at the Boston Passport Agency in Boston, Massachusetts. He did so in the name George France, DOB 02/14/1966, born in Phoenix, Arizona, to parents whose names at the times of their births were Robert Charles France and Ann Anntoinette Ropkas. According to information supplied with the application, the applicant was seeking a new passport because he inadvertently put the old one through the wash. Along with the application he submitted, as proof of identity, a birth certificate in the George France identity that appeared to have been issued on May 13, 1997, and an Arizona driver's license in the George France identity that also appeared to have been issued on May 13, 1997. The driver's license provided an address of 2345 W Lobo, Mesa, Arizona. In light of information that came to light subsequently, no passport has been issued pursuant to this application.

5.      Among other things, investigation has revealed that George France died on February 18, 1966, four days after he has born. Investigators have spoken to Ann Anntoinette France, who confirmed this information, and have also obtained the death certificate for George France.

6.      Investigation has also shown that other children were born to Ann France, including Annie France, Steve France, and William France. Both Steve France and William France lived into adulthood but are deceased. Investigators spoke to Annie and her husband, Dale Reeves. Among other things, Reeves provided a list of friends who were close to Steve France. One of them was Nolte. According to Reeves, Nolte lived with Steve France at around the time of Steve France's death (he died on July 18, 1997). Reeves told investigators, among other things, that Nolte was very good with computers. According to records from Steve France's Arizona driver's license, his address was 2345 W Lobo, Mesa, Arizona. (Again, the Arizona driver's license in the name George France submitted with the passport application on May 11, 2012, had an address of 2345 W Lobo, Mesa, Arizona.)

7.      As part of the investigation, we obtained other passport applications submitted in the name George France, as well as a passport application submitted in Nolte's name and a photograph of Nolte on file with the Arizona motor vehicles department. The Nolte application was submitted on April 12, 1993. The copy of the Nolte motor vehicles photograph I have is undated but appears similar to the photograph on the April 12, 1993 application. The first George France application was submitted on May 15, 1997 in Los Angeles. A passport was issued on May 16, 1997. The second application was submitted on May 30, 1997, at the embassy in San Jose, Costa Rica, and information provided by the applicant suggested the passport issued on May 16 had been stolen in San Jose. A third passport was issued on April 30, 2007, renewing the passport that had been issued pursuant to the application submitted in Costa

Rica. The fourth and final application was the one submitted in Boston on May 11, 2012. I have compared the photographs on the four George France applications with the Nolte photographs from the Nolte application and the Arizona motor vehicle department, and I believe they all depict the same person. On the two most recent passport applications Nolte has facial hair, but he has a distinctive combination of features, including eyebrows, hairline, ears, and jawline, that is common to all of the photographs. In addition, the Nolte application and motor vehicle photographs appear very similar to the first two George France application photographs, as well as to a George France driver's license photograph that appears to be from May 13, 1997. The person depicted in these photographs has no facial hair, and, again, I believe they all depict the same person.

8. In addition, different social security numbers were used on the George France applications. The one appearing on the May 15, 2012 application was 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. The one appearing on the May 30, 1997 application was one number different: 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. The number on the last two applications was 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.

9. I spoke with the person purporting to be George France on May 22, 2012, after he had submitted the application on May 11, 2912. In substance and among other things he said he had a diving accident in 1999 that resulted in memory problems, including difficulty remembering proper names. He was unable to provide the names of any schools he attended in grades K-12, indicating only that he went to school in Tempe, Arizona. He said that he went to college at Arizona State University. (Arizona State University later informed me that it was unable to locate any record of George France, DOB 02/14/1966, having attended the institution.) He told us that he, his brother Steve, and his brother William had all used the same social security number until Steve's death in 1997; that shortly after Steve's death his own credit cards began to

4

get canceled; that he determined that this was because the social security number he had been using had been reported as belonging to a deceased person; and that he thereafter obtained his own number in 1999 (the number that appears on the third and fourth applications).

10. According to the Social Security Administration, neither the number appearing on the May 15, 1997 application nor the number appearing on the May 30, 1997 application was issued to either Steve France, William France, George France, or any member of the France family. One of them was issued to a male residing in Hawaii, and the other to a male apparently completely unrelated to the Frances living in Arizona.

11. Investigation has revealed that Nolte had a motive to change his identity in 1997. According to information provided to DSS by the Tempe Police Department, Nolte was terminated from a job with an entity called Fulton Homes in 1996. Between January 4, 1997 and May 1, 1997, nine business checks were stolen from the corporate office of Fulton Homes. Five of those checks were forged and deposited into a business account opened in the name Etlon Communications, Inc., a company wholly owned by Nolte. The checks bore the forged signature of the Fulton Homes president and totaled $571,649.17. Subsequent investigation by the Tempe Police Department showed that Nolte transferred $135,000 to a Cost Rican bank account on May 12, 1997. The driver's license and the birth certificate issued in the name George France and submitted with the May 11, 2012 application were issued the next day, on May 13, 1997. On May 20, 1997, Nolte made two wire transfers of funds to the Cost Rican bank account, one for $118,500 and the other for $290,000. On May 30, 1997, the second passport application in the George France identity was submitted in San Jose, Costa Rica.

12. A fingerprint examiner was able to develop six latent prints of value on the May 11, 1012 application. DSS obtained from the Chandler, Arizona police department a set of Nolte's

fingerprints, which were obtained as exclusion prints in an investigation in which Nolte was not a suspect. The examiner determined that four of the latent prints on the application were not Nolte's but did not have a complete enough set of Nolte's prints to make a determination as to the other two. I am aware through my training in investigating cases involving false statements in passport applications that the fingerprints of the applicant are not necessarily always found on the application, and that there are other sources of fingerprints found on passport applications, including but not limited to the acceptance clerk who initially received the application and Department of State employees who may have processed or investigated the application.

13. After Nolte was indicted on August 20, 2013, I began making preparations to execute the arrest warrant. Nolte had been living as George France in a condominium at 1 Chestnut Street, Unit 5B, Boston, Massachusetts. However, I learned on August 20, 2013 that Nolte apparently sold this condominium within the past three months. I do not know where he moved. Initial investigation has disclosed that he apparently did not provide a forwarding address at a UPS location on Charles Street at which he had been receiving mail, and I have been unable to discover any address more recent than the Chestnut Street address. On the May 11, 2012 application, Nolte provided the Target Telephone as his primary contact number. I checked on August 21, 2013 with Accurint, a commercially available database, and it indicates that the Target Telephone is assigned to George France. There therefore is probable cause to believe that Nolte has used and continues to use the Target Telephone. I am aware through my training that the Requested Information will enable us to locate the Target Telephone and therefore, presumably, Nolte, who is the subject of an outstanding arrest warrant and therefore a "person to

be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

_____
JAMES J. JENKINS

Special Agent
Diplomatic Security Service

Sworn and subscribed to me this ___ day of August 2013, in Boston, Massachusetts.

_____
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF )<br>THE UNITED STATES OF AMERICA FOR AN )<br>FOR AUTHORIZATION TO OBTAIN )<br>LOCATION DATA CONCERNING: A )<br>SPRINT CELLULAR TELEPHONE )<br>WITH CALL NUMBER **617- 501-4417**. ) | NO. 13 mj 7112 JCB<br><br>**FILED UNDER SEAL** |

## ORDER

An application having been made by the United States for an Order pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), directing Sprint to assist agents of the United States Department of State Diplomatic Security Service ("DSS") by providing all information, facilities and technical assistance needed to ascertain the physical location including but not limited to E-911 Phase II data indicating the specific latitude and longitude of (or other precise location information concerning) (the "Requested Information") the following target device for a period of thirty (30) days: a Sprint cellular telephone with call number 617-501-4417, believed to be used by Steven Nolte, a/k/a George France ("Nolte") (hereinafter, the "Target Telephone");

The Court finds that there is probable cause to believe that the Requested Information will assist law enforcement in arresting Nolte, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

**IT IS HEREBY ORDERED**, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), that Sprint, beginning at any time within fourteen (14) days of the date of this Order and for a period not to exceed thirty (30) days from the date of this Order, provide to agents of DSS the Requested Information concerning the Target Telephone, with said

-1-

authority to extend to any time of the day or night as required, including when the Target Telephone leaves the District of Massachusetts; all of said authority being expressly limited to ascertaining the physical location of the Target Telephone and expressly excluding the contents of any communications conducted by the user(s) of the Target Telephone.

**IT IS FURTHER ORDERED** that DSS compensate Sprint for reasonable expenses incurred in complying with any such request.

**IT IS FURTHER ORDERED** that agents of DSS and other law enforcement officers and persons authorized to provide them with necessary and technical assistance are authorized to acquire the Requested Information concerning the location of the Target Telephone for a period of thirty (30) days from the date of this Order or until the goals of the investigation have been achieved.

**IT IS FURTHER ORDERED** that the Court's Order, the Service Order, the accompanying Affidavit submitted in support thereof, the Search Warrant Application, and Search Warrant, as they reveal an ongoing investigation, be sealed until further Order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that copies of the Court's Order in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of DSS, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and Sprint as necessary to effectuate the Court's Order.

**IT IS FURTHER ORDERED** that this warrant be returned to the issuing judicial officer

within ten (10) days after the termination of the execution of the warrant.

**IT IS FURTHER ORDERED** that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), service of notice may be delayed for a period of thirty (30) days after the termination of the execution of the warrant.

**IT IS FURTHER ORDERED** that Sprint, its affiliates, officers, employees, and agents not disclose the Court's Order or the underlying investigation, until notice is given as provided above.

Dated: August 22, 2013, at Boston, Massachusetts.

Time: 10:39 a.m.

_____
HONORABLE JENNIFER C. BOAL
United States Magistrate Judge
District of Massachusetts